IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CAJUN INDUSTRIES, LLC                                                    PLAINTIFF

v.                                          CAUSE NO. 1:24CV107-LG-RPM

CALGON CARBON
CORPORATION and O'NEAL
CONSTRUCTORS, LLC                                            DEFENDANTS

MEMORANDUM OPINION AND ORDER
CONCERNING THE PARTIES' PENDING MOTIONS

**BEFORE THE COURT** are the [27] Motion to Compel Arbitration and for

Mandatory/Discretionary Stay Pending Arbitration filed by Defendant O'Neal

Constructors, LLC; the [29] Motion to Compel Arbitration filed by Plaintiff Cajun

Industries, LLC; and the [31] Motion to Dismiss Counts Two, Four, and Five of

Plaintiff's Amended Complaint filed by Defendant Calgon Carbon Corporation.

After reviewing the submissions of the parties, the record in this matter, and

the applicable law, the Court finds that Cajun's claims against O'Neal should be

submitted to binding arbitration. Cajun's claims against Calgon should not be

submitted to arbitration. This lawsuit will be stayed and closed for statistical

purposes pending arbitration of Cajun's claims against O'Neal. Calgon's [31]

Motion to Dismiss is denied at this time.

## BACKGROUND

Calgon retained O'Neal to serve as the general contractor on a construction

project to expand its facility in Bay St. Louis, Mississippi. [15 ¶6]. O'Neal entered

into one Subcontract with Cajun for site development work and one Subcontract

with Cajun for concrete work.  [15 ¶7].  Cajun filed this lawsuit against O'Neal and Calgon in the Circuit Court of Hancock County, Mississippi, and O'Neal removed the case to this Court.  [1].  On the dame day, Cajun filed a demand for arbitration of all of its claims with the American Arbitration Association ("AAA").  [43-1].

In its First Amended Complaint, Cajun claims that Calgon became aware during the course of the project that O'Neal was not paying its subcontractors for work they performed.  [15 ¶13].  Cajun alleges, "The situation became so poor that Calgon began taking over the project directly and directly paying subcontractors, fulfilling the contract obligations that O'Neal had entered into.  Indeed, Calgon created the expectation amongst those working on the project that Calgon would fulfill O'Neal's obligations if O'Neal failed to do so."  *Id.* at ¶14.  Although Cajun claims it "diligently performed its work and supplied its materials," O'Neal and Calgon have "refused to pay Cajun what Cajun is owed."  *Id.* at ¶¶14–15.  It has filed a breach of contract claim against O'Neal, a claim for payment pursuant to Miss. Code Ann. § 85-7-405 against both O'Neal and Calgon, a claim for lien enforcement against Calgon, a quantum meruit claim against Calgon, and an unjust enrichment claim against Calgon.  *Id.* at pp. 6–9.

O'Neal has filed a [27] Motion to Compel Arbitration of Cajun's claims.  It also seeks a stay of the claims Cajun asserts against Calgon pending the resolution of the arbitration.  Both of the Subcontracts between Cajun and O'Neal provide for alternative dispute resolution for "[a]ny controversy, claim or dispute arising out of or in any way in connection with the Subcontract or the Project, and which the

parties do not promptly adjust and informally resolve." [15-1 §10; 15-2 §10]. The

parties further agreed:

> Claims not resolved by mediation shall be decided by arbitration,
> which, unless the parties mutually agree otherwise, shall be in
> accordance with the Construction Industry Arbitration Rules of the
> American Arbitration Association currently in effect. The arbitration
> hearing shall be held in Mississippi unless the claims arise out of or
> relate to an arbitration proceeding pending in another city and/or
> state. . . . Subcontractor consents to the joinder of or to any third party
> arbitration proceeding when participation of Subcontractor, as a party
> to such third-party arbitration, is necessary for a full and complete
> resolution of one or more issues in dispute. All issues regarding
> whether a dispute is arbitrable pursuant to this provision shall be
> determined by the arbitrator. The parties acknowledge this agreement
> involves interstate commerce and is governed by the Federal
> Arbitration Act.

[27-2 §10(D); 27-3 §10(D)]. Cajun has not opposed O'Neal's Motion to Compel

Arbitration, but Calgon opposes O'Neal's request for a stay so that its [31] Motion to

Dismiss Counts Two, Four, and Five of Cajun's [15] Amended Complaint can be

decided. Cajun has filed a [29] Motion to Compel Arbitration of its claims against

Calgon, but Calgon opposes the Motion on the basis that it was not a signatory to

the Subcontracts that contain arbitration clauses.

## DISCUSSION

## I. O'NEAL'S MOTION TO COMPEL ARBITRATION OF CAJUN'S CLAIMS

"Arbitration is a matter of contract between the parties, and a court cannot

compel a party to arbitrate unless the court determines the parties agreed to

arbitrate the dispute in question." *Pennzoil Expl. & Prod. Co. v. Ramco Energy

Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998).

> In adjudicating a motion to compel arbitration under the FAA, this court conducts a two-step inquiry.  The first question is whether the parties agreed to arbitrate the dispute in question. This step involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement.  The second question is whether legal constraints external to the parties' agreement foreclose[] the arbitration of those claims.

*Ford Motor Co. v. Ables*, 207 Fed. App'x. 443, 446 (5th Cir. 2006) (citations and quotation marks omitted).

Cajun filed a demand for arbitration of its claims against O'Neal and Calgon with AAA on the same day that it filed this lawsuit.  [43-1].  It has not filed a response in opposition to O'Neal's Motion to Compel Arbitration.  In a separate Motion, it asks the Court to compel arbitration of its claims against Calgon pursuant to the same arbitration clauses cited by O'Neal.  Therefore, Cajun has affirmed the validity and scope of the arbitration clause.  O'Neal's Motion to Compel Arbitration of Cajun's claims is granted as unopposed.

## II.  CAJUN'S MOTION TO COMPEL ARBITRATION OF ITS CLAIMS AGAINST CALGON

Cajun asks the Court to compel arbitration of its claims against Calgon. While Calgon does not challenge the validity or scope of the arbitration clauses, it argues that it should not be required to participate in arbitration because it was not a signatory to the Subcontracts containing the arbitration clauses.

Generally, under the FAA, only the parties who sign an agreement are bound by an arbitration clause included in the agreement.  9 U.S.C. § 2.  However, "traditional principles of state law may allow an arbitration contract to be enforced .

. . against nonparties to the contract through a number of state-contract-law theories, including equitable estoppel." *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 255 (5th Cir. 2014) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)).

Cajun argues that Calgon should be required to arbitrate under Mississippi's direct-benefits theory of estoppel because Calgon received tax benefits from a provision in both Subcontracts stating that Calgon "shall issue a Purchase Order(s) and directly make payment to [Cajun's] Vendor(s) for" certain materials. [15-1 §1(A); 15-2 §1(A)].  The Subcontracts further provided that Cajun was "obligated to familiarize itself with and fully comply with all applicable requirements of Exhibit I pertaining to Direct Purchase Items included in [Cajun's] work." [15-1 §4(E); 15-2 §4(E)].  Exhibit I to the Subcontracts consisted of eight pages of procedures that Cajun was required to follow "[i]n order to permit [Calgon] to purchase certain materials and other tangible personal property, free of Mississippi Sales Tax." [15-1 p. 110; 15-2 p. 110].  These procedures were explicitly incorporated into the Subcontracts.  *Id.*  The portions of the Subcontracts pertaining to Calgon's direct purchase of materials are not mentioned in Cajun's First Amended Complaint, and they do not appear to be at issue in this lawsuit.

Calgon counters that it had insufficient knowledge of the Subcontracts between Cajun and O'Neal for direct-benefits estoppel to apply.  It also cites the following provision in the Subcontracts:

> Neither this Subcontract, nor any actions undertaken by the parties
> pursuant thereto, shall create any third[-]party beneficiary rights,

contract rights, or other legally[ ]enforceable expectations for any
person or entity not a signatory party to this Subcontract.

[15-1 §16(B); 15-2 §16(B)].  Furthermore, Calgon argues that it did not seek or

obtain a direct benefit from the Subcontracts that could result in application of

direct-benefits estoppel.

Under Mississippi law, equitable estoppel "is an extraordinary remedy" that

"should only be invoked to prevent unconscionable results."  *Harrison Enters., Inc.*

*v. Trilogy Commc'ns, Inc.*, 818 So.2d 1088, 1095 (Miss. 2002).  It should therefore be

"applied cautiously and only when equity clearly requires it."  *Id.* (quoting *Bright v.*

*Michel*, 137 So.2d 155, 159 (1962)).  Direct-benefits estoppel applies to non-

signatories "who, during the life of the contract, have embraced the contract despite

their non-signatory status, but then, during litigation, attempt to repudiate the

arbitration clause in the contract."  *Olshan Found. Repair Co. of Jackson, LLC v.*

*Moore*, 251 So. 3d 725, 731 (Miss. 2018) (citing *Pinnacle Trust Co., L.L.C. v.*

*McTaggart*, 152 So. 3d 1123, 1124 (Miss. 2014)).

Direct-benefits estoppel generally applies when a non-signatory plaintiff

seeks to enforce the terms of a contract containing an arbitration provision by suing

a signatory defendant, but the plaintiff objects to enforcement of an arbitration

clause contained within that contract.  *See, e.g., Washington Mut. Fin. Grp., LLC v.*

*Bailey*, 364 F.3d 260, 268 (5th Cir. 2004) ("[T]he doctrine of estoppel prevents a

party from having it both ways.");  *Scruggs v. Wyatt*, 60 So. 3d 758, 770 (Miss. 2011)

(a non-signatory plaintiff was compelled to arbitrate his claims against signatory

and non-signatory defendants because his claims alleged that he was entitled to

direct benefits pursuant to the agreement containing an arbitration clause); *Seal v. S. Energy Homes, Inc.*, No. 1:20CV190-HSO-JCG, 2021 WL 1427671, at \*6 (S.D. Miss. Jan. 26, 2021) (holding that, since the non-signatory plaintiff sought to enforce the contract and filed claims that must be determined by reference to that contract, she was estopped from objecting to an arbitration clause in the contract).

In the present case, however, a signatory plaintiff is attempting to invoke the doctrine of direct-benefits estoppel against a non-signatory defendant who has not filed a claim that refers to or seeks to enforce the agreement containing the arbitration clause.  The Court has not located any Mississippi or Fifth Circuit case that applies direct-benefits estoppel in this circumstance.  *See Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 372 (S.D. Tex. 2006), *aff'd*, 322 F. App'x 410 (5th Cir. 2009) ("No Fifth Circuit case has applied direct-benefits estoppel to a non-signatory who has not sued the signatory.").  In fact, the Fifth Circuit has held that a party who did not file claims under an arbitration agreement did not "exploit" the agreement "to the degree that the cases that consider applying this version of estoppel require."  *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003) ("There is an important distinction . . . between cases where the courts seriously consider applying direct benefits estoppel, and the case at bar."); *see also Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 444 n.9 (5th Cir. 2022) (noting that, in *Bridas*, the Fifth Circuit "limited direct-benefits estoppel to when the non-signatory has brought suit against a signatory premised in part upon the agreement") (internal quotation marks and brackets omitted).

Nevertheless, a Texas district court has determined that direct-benefits estoppel can, in limited circumstances, require a non-signatory defendant to participate in the arbitration of a signatory plaintiff's claims against him. *Wood*, 458 F. Supp. 2d at 371. Although recognizing that courts should be "extraordinarily cautious in allowing a contracting party to reach out to enforce an arbitration clause in that contract against a nonparty, particularly if the nonparty has not himself sued the party," the "unique fact" that the non-signatory's separate lawsuit was allegedly prohibited by the agreement containing the arbitration clause and had led to the filing of the underlying lawsuit warranted application of direct-benefits estoppel. *Id.* at 372. The Texas federal court provided the following explanation of the reasoning behind its decision:

> [D]irect-benefits estoppel cannot create liability for noncontracting parties that does not otherwise exist. . . . The keys are whether the non-signatory demanded and received substantial and direct benefits under the contract containing the arbitration clause, by suing the signatory under that contract or otherwise; the relationship between the claims to be arbitrated and the contract; and whether equity prevents the non-signatory from avoiding the arbitration clause that was part of that contract.

*Id.* at 371.

In the present case, the Court finds that Calgon should not be compelled to defend Cajun's claims in an arbitration proceeding. It did not sign the Subcontracts containing the arbitration clauses, and it has not filed any claims attempting to enforce the Subcontracts. Furthermore, the Mississippi Supreme Court has denied arbitration where, inter alia, the claims at issue were not dependent on the terms of the agreement containing the arbitration clause. *Simmons Hous., Inc. v. Shelton ex*

*rel. Shelton*, 36 So. 3d 1283, 1288 (Miss. 2010).  Here, Cajun's claims against Calgon do not directly pertain to the Subcontracts or arise out of the Subcontracts; rather, the claims are based on a state statute, Miss. Code Ann. § 85-7-401, and principles of equity.  *See Hughes v. Shipp*, 324 So. 3d 286, 290 (Miss. 2021) (holding that unjust enrichment is an equitable remedy that applies when there is no legal contract); *Beasley v. Sutton*, 192 So. 3d 325, 332 (Miss. Ct. App. 2015) ("An unjust enrichment action is based on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.").  Given that estoppel is "an extraordinary remedy [that] should only be invoked to prevent unconscionable results," *Harrison Enters.*, 818 So. 2d at 1095, it would be inappropriate to estop Calgon from objecting to arbitration of the equitable and statutory claims that Cajun has filed against it.

## III.  MOTIONS FOR A STAY

O'Neal asks the Court to stay this case pending arbitration.  Because the Court has determined that Cajun's claims against O'Neal must be submitted to binding arbitration, it must stay litigation of those claims pursuant to Section 3 of the FAA.  *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024).

O'Neal also requests a stay of Cajun's claims against Calgon, but "it is unsettled in the Fifth Circuit whether the . . . mandatory stay provision under 9 U.S.C. § 3 may be invoked by a signatory against a non-signatory." *Peak Pipe & Supply, LLC v. UMW Oilfield (L) Int'l LTD*, No. 3:18-CV-410-L, 2018 WL 6177268, at *2 (N.D. Tex. Nov. 27, 2018).  However, even if a mandatory stay is not available

-9-

under Section 3, a court can exercise its discretion to stay claims against non-signatories as a means of controlling and managing the docket and preserving the purpose of the arbitration.  *See Compl. of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983)).  The relevant factors for determining whether to exercise discretion to stay claims against a non-signatory are whether: "(1) the arbitrated and litigated disputes involve the same operative facts; (2) the claims asserted in the arbitration and litigation are 'inherently inseparable'; and (3) the litigation has a 'critical impact' on the arbitration."  *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016).

As this Court has previously determined in another lawsuit that arose out of the Calgon construction project, the breach of contract and failure to pay claims against O'Neal and the equitable and statutory claims filed against Calgon "turn on the same essential nucleus of operative facts" — "whether Plaintiff rendered services on the construction project under the Subcontract and whether it was paid for rendering those services."  *See Warren Paving, Inc. v. O'Neal Constructors, LLC*, No. 1:24-CV-009-HSO-BWR, 2024 WL 3687088, at *6 (S.D. Miss. Aug. 5, 2024). Furthermore, "[r]esolution of these issues in litigation could have a 'critical impact' on the arbitration of Plaintiff's claims against O'Neal, such that 'the arbitration proceedings would be both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration.'"  *Id.* (quoting *Harvey v. Joyce*, 199 F.3d 790, 796 (5th Cir. 2000)).  Finally, a breach of contract claim filed against a signatory

defendant is inseparable from an equitable claim against a non-signatory defendant pursuant to Fifth Circuit precedent. *See id.* (citing *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 345 (5th Cir. 2004)). Since Cajun seeks payment from O'Neal and Calgon for work it did on the same construction project, a discretionary stay of Cajun's claims against Calgon is appropriate pending resolution of arbitration of Cajun's claims against O'Neal.

## CONCLUSION

For the foregoing reasons, the Court finds that Cajun's claims against O'Neal should be submitted to binding arbitration. The Court further finds that Cajun's attempt to force Calgon to defend Cajun's claims in an arbitration proceeding that Calgon has not agreed to would have inequitable results. Cajun's claims filed against O'Neal in this Court are subject to a mandatory stay pending arbitration. Cajun's claims against Calgon will also be stayed pending the Cajun and O'Neal arbitration due to the inter-connected nature of those claims.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [27] Motion to Compel Arbitration and for Mandatory/Discretionary Stay Pending Arbitration filed by O'Neal Constructors, LLC, is **GRANTED**. Cajun Industries, LLC, is **ORDERED** to pursue its claims against O'Neal Constructors, LLC, to arbitration.

**IT IS FURTHER ORDERED AND ADJUDGED** that this case is **STAYED** and **ADMINISTRATIVELY CLOSED** for statistical purposes pending outcome of the arbitration between Cajun Industries, LLC, and O'Neal Constructors, LLC.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [29] Motion to Compel Arbitration filed by Plaintiff Cajun Industries, LLC as to its claims against Calgon Carbon Corporation is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [31] Motion to Dismiss Counts Two, Four, and Five of Plaintiff's Amended Complaint filed by Defendant Calgon Carbon Corporation is **DENIED**, without prejudice to Calgon's right to re-file the motion upon the conclusion of the arbitration and the lifting of the stay.

**SO ORDERED AND ADJUDGED** this the 16th day of October, 2024.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE