IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CAJUN INDUSTRIES, LLC**                                               **PLAINTIFF**

v.                                                          CAUSE NO. 1:24CV107-LG-RPM

**CALGON CARBON
CORPORATION and O'NEAL
CONSTRUCTORS, LLC**                                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER GRANTING CALGON
CARBON CORPORATION'S MOTION TO DISMISS
COUNTS 2, 4, AND 5 OF THE AMENDED COMPLAINT**

Cajun Industries, LLC, filed this lawsuit against O'Neal Constructors, LLC, and Calgon Carbon Corporation, seeking payment for work it performed on the Calgon Carbon G-Line Expansion Project in Bay St. Louis, Mississippi. Calgon, the project owner, has filed a [51] Motion to Dismiss Counts 2, 4, and 5 of Cajun's [15] Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The parties have fully briefed the Motion. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the Motion should be granted.

## BACKGROUND

Calgon retained O'Neal to serve as the general contractor on a construction project to expand its facility. O'Neal entered into one subcontract with Cajun for site development work and another for concrete work. Cajun filed this lawsuit against O'Neal and Calgon in the Circuit Court of Hancock County, Mississippi, and O'Neal removed the case to this Court on the basis of diversity jurisdiction.

In its Amended Complaint, Cajun claims that Calgon became aware during the project that O'Neal was not paying its subcontractors for work they performed. Cajun alleges:

> The situation became so poor that Calgon began taking over the project directly and directly paying subcontractors, fulfilling the contract obligations that O'Neal had entered into. Indeed, Calgon created the expectation amongst those working on the project that Calgon would fulfill O'Neal's obligations if O'Neal failed to do so.

Am. Compl. [15] at 5. Cajun claims it "diligently performed its work and supplied its materials," but O'Neal and Calgon failed to pay Cajun what it is owed. *Id*. It has filed a breach of contract claim against O'Neal, a claim for payment pursuant to Miss. Code Ann. § 85-7-405 against both O'Neal and Calgon, a claim for lien enforcement against Calgon, a quantum meruit claim against Calgon, and an unjust enrichment claim against Calgon. Cajun claims the defendants owe "an amount not less than $2,873,619.46, together with attorney fees, statutory penalties, costs, pre-judgment interest, post-judgment interest, and prompt payment penalties." *Id*. at 7.

## DISCUSSION

### I.    STANDARD OF REVIEW AND CHOICE OF LAW

Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Thus, "claims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive

issue of law.'" *Jackson v. U.S. Dep't of Hous. & Urb. Dev.*, 38 F.4th 463, 466 (5th Cir. 2022) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). "Dismissal under Rule 12(b)(6) also is warranted if the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation modified). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 733 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When deciding a Rule 12(b)(6) Motion, a court "accept[s] all well-pleaded facts as true and review[s] them in the light most favorable to the plaintiff." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 372 (5th Cir. 2010). Generally, courts can only consider the facts set forth in the complaint and its attachments. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766–67 (5th Cir. 2016).

Federal courts sitting in diversity apply the forum state's substantive law. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). When analyzing substantive issues, the federal court first looks to the decisions of the state's highest court, if available. *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 794 (5th Cir. 2010). Otherwise, the federal court generally looks to decisions of the state's immediate appellate court. *Id.* When state courts have not provided guidance, the federal court "must attempt to predict state law, not to create or modify it." *Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991) (citation modified).

## II.   COUNT 2 OF THE AMENDED COMPLAINT

In Count 2, Cajun states that it is pursuing a "Section 85-7-405 Payment Action." Am. Compl. [15] at 6. This statute provides:

> A payment action for the recovery of the amount of the lien claimant's claim *against the party he contracted with* shall be commenced in county, circuit or chancery court within one hundred eighty (180) days from the date of filing for record of the lien claimant's claim of lien.

Miss. Code Ann. § 85-7-405(1)(c)(i) (emphasis added).

Calgon argues that this statute does not allow a contractor to file a payment action against a project owner when there is no contract between the contractor and owner. Cajun responds that "Calgon is correct that the statute requires that such an action be brought against 'the party [the claimant] contracted with,' Miss. Code Ann. § 85-7-405(1)(c)(i), but Calgon does not point to any provision of the statute that prevents a claimant from also bringing a payment action against the owner." Pl.'s Resp. Mem. [55] at 11.

However, just because the statute does not prohibit a payment action against an owner does not necessarily mean that it permits one. Under Mississippi law, "where a statute enumerates and specifies the subject or things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned or under a general clause, those not of like kind or classification as those enumerated." *Jones Cnty. Sch. Dist. v. Dep't of Revenue*, 111 So. 3d 588, 601 (Miss. 2013) (citation modified). The lack of a statutory provision that prohibits payment actions against project owners does not mean that the statute allows contractors to file payment actions against owners. Thus, Calgon cannot extend the scope of § 85-

-4-

7-405(1)(c)(i) beyond the four corners of its statute's intended reach.

In Count 2 of the Complaint, Cajun also seeks recovery of the prompt payment penalty set forth at Miss. Code Ann. § 87-7-3.[1] This statute provides that interest shall accrue at the rate of one percent per month until fully paid if the contractor is not paid within thirty calendar days from the date funds were due and payable. Miss. Code Ann. § 87-7-3(b). *Id.* Calgon cites *The Stellar Group v. Pilgrim's Pride Corp.*, which held that a contractor could not recover a statutory penalty from a project owner that had not entered into a contract with the contractor. No. 3:06CV186-WHB-LRA, 2007 WL 3475074, at *4 (S.D. Miss. Nov. 13, 2007). Cajun counters that this case is not persuasive because it was decided before Miss. Code Ann. § 85-7-405 was enacted. Cajun's argument is not well taken because the subsequent enactment of Section 85-7-405 did not alter the requirements of the statute the Court was interpreting in *The Stellar Group* case, Miss. Code Ann. § 87-7-3. Cajun has not stated a plausible claim against Calgon under Miss. Code Ann. § 87-7-3 or Miss. Code Ann. § 85-7-405 because Cajun did not have a contract with Calgon.

### III. COUNT 4 OF THE AMENDED COMPLAINT

#### A. Alternative Relief

Cajun argues that the Court should allow its quantum meruit claim to

---

[1] Cajun also claims that Calgon violated Miss. Code Ann. § 85-7-407(3) and Miss. Code Ann. § 85-7-413(1)(b), which provide for treble damages for refusal to pay when certain conditions are met. In its Response Brief, Cajun conceded that it cannot recover treble damages from Calgon.

proceed because "quantum meruit is a well-recognized alternative claim for relief." Pl.'s Resp. Mem. [55] at 3 (emphasis omitted). Essentially, Cajun claims that it is not "per se barred from asserting a quantum meruit claim as well as contractual claims." *Id.* at 5. However, Calgon has not claimed that Cajun should be barred from asserting a breach of contract claim and a quantum meruit claim in the same Complaint. It is undisputed that no contract existed between Calgon and Cajun, and Calgon has not disputed that a valid and enforceable contract existed between Cajun and O'Neal.

Cajun also argues, "[S]o long as any one of Cajun's alternative statements of recovery is sufficient, then the whole pleading is." Pl.'s Resp. Mem. [55] at 4 (citing *Perkins v. United Surgical Partners Int'l, Inc.*, No. 23-10375, 2024 WL 1574342 at *5 n.9 (5th Cir. 2024)). This argument is not well taken. In the unpublished *Perkins* decision, the Fifth Circuit panel cited Fed. R. Civ. P. 8(d)(2), which provides:

> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

*Perkins*, 2024 WL 1574342 at *5 n.9 (citing Fed. R. Civ. P. 8(d)(2)). Neither the *Perkins* decision nor Rule 8 provide that a motion to dismiss must be completely denied if one claim is sufficient. *See id.* In *Perkins*, the plaintiffs had made alternative allegations supporting their claim for breach of the duty of prudence. *Id.* Once the court found that some of the plaintiffs' allegations stated a claim for breach of the duty of prudence, it was not necessary for the Court address whether their alternative allegations also stated a claim for breach of that duty. *Id.* The

present case pertains to alternative claims, not alternative statements or allegations supporting the same claim. *See id.* As a result, Cajun's arguments related to alternative claims are not well taken.

### B. Rule 12(b)(6) Analysis

"Quantum meruit recovery is a contract remedy which may be premised either on express or 'implied' contract, and a prerequisite to establishing grounds for quantum meruit recovery is claimant's reasonable expectation of compensation." *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 514 (Miss. 2007) (citation modified).

> The essential elements of recovery under a quantum meruit claim are: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged.

*Id.* (citation modified). The doctrine can apply when a party seeks compensation for additional work not contemplated by a contract between the parties. *Id.* at 515. In this circumstance, a quantum meruit "award would require a finding by the court that the labor was not anticipated by the contract, and also that there were no provisions of the contract by which payment could be made for unanticipated labor." *Id.* (citation modified) (quoting *Citizens Nat'l Bank v. L.L. Glascock, Inc.*, 243 So. 2d 67, 70 (Miss. 1971)).

"[G]enerally, where there is a contract, and the contract has not failed, the parties may not abandon the contract and resort to quantum meruit." *Waste Mgmt.*

*of Miss. Inc. v. Jackson Ramelli Waste LLC*, 301 So. 3d 635, 641 (Miss. 2020). Thus, "a sub-subcontractor cannot sue on quantum meruit against a primary contractor for work done under an express contract with another person" under Mississippi law. *Redd v. L & A Contracting Co.*, 151 So. 2d 205, 208 (Miss. 1963). This is because, "in law and common sense, there cannot be an express and an implied contract for the same thing, existing at the same time." *Id.* (quoting *Walker v. Brown*, 28 Ill. 378, 383 (1862)). Thus, the *Redd* court reasoned that a sub-subcontractor did not have any reason to believe a prime contractor owed it payment at the time the work was being done because the sub-subcontractors' contract was with the subcontractor and not with the prime contractor. *Id.* at 208.

This Court has previously addressed a quantum meruit claim that arose out of the same project at issue here. *See Cuevas Mach. Co., Inc. v. Calgon Carbon Corp.*, No. 1:24-CV-114-HSO-BWR, 2025 WL 1135035, at **7–9 (S.D. Miss. Mar. 20, 2025).[2] There, the Court found that another subcontractor (Cuevas Machine Company, Inc.) had not stated a quantum meruit claim against Calgon because: (1) the work was performed pursuant to a subcontract with O'Neal; (2) Cuevas did not have "a reasonable expectation of payment outside the ambit of a valid contract"; and (3) Calgon was not on notice that Cuevas would expect payment from it. *Id.* at *9.

---

[2] The *Cuevas* case is currently on appeal before the Fifth Circuit, but the appellant has not challenged the Court's dismissal of its quantum meruit and unjust enrichment claims on appeal. *See generally Cuevas Mach. Co., Inc. v. Calgon Carbon Corp.*, No. 25-60198 (5th Cir. argued Jan. 9, 2026).

In the present case, Cajun entered into a subcontract with O'Neal, and its applications for payment were submitted to O'Neal.[3] It also concedes that it "respond[ed] to *O'Neal's requests* for change order drafts by following all procedures for change orders *specified by O'Neal*." Am. Compl. [15] at 5 (emphasis added).

In its Response Memorandum, Cajun claims that "Calgon represented directly to subcontractors that it would pay them." Pl.'s Resp. Mem. [55] at 3 (citing Am. Compl. [15] at 4–5). The Court has not located such an allegation in the Amended Complaint; rather, Cajun alleges that Calgon agreed to "purchase certain materials . . . *directly from vendors* secured by Cajun." Am. Comp. [15] at 2 (emphasis added). Cajun also quoted the subcontract, which provided that Calgon would "directly make payment to Subcontractor's Vendor(s)," not Cajun. *Id.* at 3 (quoting Ex. A at 1; Ex. B at 11; Ex. C at 4). It is unclear how Calgon's promise to directly pay *vendors* could give Cajun a reasonable expectation that Calgon would pay *Cajun* for other materials or work. Furthermore, these allegations do not support a finding that Calgon's practice of directly paying vendors put Calgon on notice that Cajun would expect direct payment for other materials and work. As a result, Cajun's "direct purchase item" allegations do not state a plausible claim for quantum meruit.

Cajun also argues that it can recover under a quantum meruit theory

---

[3] The Court can consider the applications for payment, which were attached as exhibits to the Amended Complaint. *Salinas v. City of Houston*, 138 F.4th 822, 828 (5th Cir. 2025) (noting that courts are permitted to consider any exhibits attached to a complaint when deciding a Rule 12(b)(6) motion).

pursuant to an "exception" recognized in *Ground Control, LLC v. Capsco Industries, Inc.*, 214 So. 3d 232 (Miss. 2017). Pl.'s Resp. Mem. [55] at 10. The *Ground Control* court did not mention any exception, but it noted that its prior decision in *Redd* had different facts. *Ground Control*, 214 So. 3d at 243. In *Redd*, a sub-subcontractor performed work pursuant to a valid contract with a subcontractor, but it sought to recover from a general contractor with which it had no contract. *Id.* (citing *Redd*, 151 So. 2d at 208). Meanwhile, in *Ground Control*, "the express contract between Ground Control and Capsco was void for public policy." *Id.* Since the contract in *Ground Control* was void, the court applied the following general rule:

> [I]n order to recover for work and labor on the theory of an implied contract, it is ordinarily deemed essential to show that the services were rendered under the reasonable expectation that they would be paid for by the person sought to be charged, and the person sought to be charged knew that the services were being performed with the expectation that he would pay for such work.

*Id.* at 243–44. The court noted that the *Redd* decision "reinforced" this general rule when it held that a sub-subcontractor "could only reasonably expect to be paid by the subcontractor" with which it had a contract. *Id.* at 244.

Here, it is undisputed that Cajun had a valid contract with O'Neal. As a result, pursuant to *Redd*, Cajun could only reasonably expect to be paid by O'Neal, and Calgon had no reason to believe that it would be expected to pay Cajun. Cajun has not stated a plausible quantum meruit claim against Calgon.

  **C. Whether The Court Should Reserve Ruling Until After Discovery Is Completed**

Cajun argues that it is the Mississippi courts' practice "to reserve rulings on

alternative claims for relief until after discovery." Pl.'s Resp. Mem. [55] at 9 (emphasis omitted). But none of the cases cited by Cajun explicitly recognized or adopted such a policy. Cajun's argument is not well taken.

## IV. COUNT 5 OF THE AMENDED COMPLAINT

### A. Waiver

Cajun argues that Calgon waived its request for dismissal of its unjust enrichment for failing to adequately brief it. However, Calgon discussed Cajun's quantum meruit and unjust enrichment claims together, and it argued that the same principles apply to both claims. *See* Def.'s Mem. [52] at 8–11, 12 n.2. Cajun's waiver argument is not well taken.

### B. Rule 12(b)(6) Analysis

"To collect under an unjust enrichment or quasi-contract theory, the claimant must show 'there is no legal contract but . . . the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another.'" *Johnston v. Palmer*, 963 So. 2d 586, 596 (Miss. Ct. App. 2007) (citation modified). "[U]njust enrichment is an implied contract claim comparable to quantum meruit . . . ." *Miss. State Port Auth. at Gulfport v. Yilport Holding A.S.*, 416 So. 3d 83, 96 (Miss. 2025). Both this Court and the Mississippi Court of Appeals have applied the general rule recognized in *Redd* to an unjust enrichment claim:

> As a general rule, in order to recover for work and labor on the theory of an implied contract, it is ordinarily deemed essential to show that the services were rendered under the reasonable expectation that they would be paid for by the person sought to be charged, and the person

> sought to be charged knew that the services were being performed with the expectation that he would pay for such work.

*O'Brien v. Pegues*, 325 So. 3d 1228, 1236 (Miss. Ct. App. 2021) (quoting *Redd*, 151 So. 2d at 20); *Cuevas*, 2025 WL 1135035, at **7–8. As a result, Calgon is correct that Cajun's unjust enrichment claim should be dismissed for the same reason as its quantum meruit claim.

Furthermore, "[t]here is nothing inherently unjust about enrichment"; an unjust-enrichment claim applies only to "enrichments . . . objectively seen as unjust." *Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76, 92 (Miss. 1992).

> The mere fact that a third person . . . benefits from an arrangement between two other persons . . . does not make such third person liable in quasi contract, unjust enrichment, or restitution. Moreover, where a third person benefits from an agreement . . . entered into between two other persons, *in the absence of some misleading or wrongful act by the third person*, the mere failure of performance by one of the contracting parties . . . does not give rise to a right of restitution against the third person . . . .

*Id.* at 92–93. However, if the person who benefitted "participated in or caused a breach of some duty imposed in law," the enrichment is unjust. *Id.* at 92; *see also Indus. Indem. Co. v. Truax Truck Line, Inc.*, 45 F.3d 986, 991 (5th Cir. 1995) (finding that a district court erred when it held that a party was unjustly enriched without first determining "whether [that party] procured the 'mistake' or participated in or caused a breach of some duty imposed in law"); *On-Site Fuel Serv., Inc. v. Loomis Armored US, Inc.*, No. 3:08CV658 HTW-LRA, 2010 WL 11682195, at *3 (S.D. Miss. Aug. 10, 2010) (a plaintiff that alleges no misleading or

wrongful act on the part of the beneficiary fails to state an unjust enrichment claim under Mississippi law).

In support of its unjust enrichment claim, Cajun alleges:

> Cajun provided services to Calgon, both directly and through Calgon's general contractor, in the good faith understanding that Cajun would be paid for those services. Calgon benefited from Cajun's services. Despite formal demand for payment, Calgon refuses to pay. . . . By its failure to pay, Calgon has been unjustly enriched at Cajun's expense.

Am. Compl. [15] at 9. Since Cajun has not alleged that Calgon did anything to prevent O'Neal's failure to pay under the subcontracts, it has not stated a plausible claim for unjust enrichment.

## CONCLUSION

Calgon has not provided allegations sufficient to state a plausible claim for quantum meruit or unjust enrichment. It has also failed to state a claim for recovery under Miss. Code Ann. § 85-7-405 or Miss. Code Ann. § 87-7-3.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [51] Motion to Dismiss filed by Calgon Carbon Corporation is **GRANTED**. Counts 2, 4, and 5 of Cajun Industries, LLC's Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 11th day of February, 2026.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE